**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **VERNAIZE K. COLEMAN, et al., on Behalf of Themselves and All Others Similarly Situated,** | |
| *Plaintiffs*, | **1:22-cv-05664 (ALC)** |
| -against- | |
| **OPTUM INC., et al.,** | **OPINION & ORDER** |
| *Defendants*. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiffs Vernaize K. Coleman, Cynthia Holmes, Daniela Porcino, Rebecca Angulo, Terry Powell, and Nancy Shusterman ("Plaintiffs") were remote case investigators and monitors that contact traced COVID-19 infections in New York City between 2020 and 2022. Plaintiffs filed the instant action on behalf of themselves and all others similarly situated against Defendants Adecco USA, Inc. ("Adecco"), Apex Systems, Inc ("Apex"), Equity Staffing Group, Inc. ("Equity"), and Insight Global, LLC ("Insight") (collectively, the "Staffing Agencies"), and Optum, Inc., ("Optum") (collectively, "WARN Defendants"). ECF No. 1, Compl. Plaintiffs bring suit on behalf of all similarly situated employees (the "WARN Class"), in their representative capacity under the federal and New York Worker Adjustment and Retraining Notification Acts (collectively the "WARN Acts"), New York Labor Law ("NYLL") § 860 *et seq*.; 29 U.S.C. § 2101 *et seq*.

Plaintiffs allege WARN Defendants failed to give the WARN Class notice of their termination. The federal WARN Act mandates 60 days' notice, while the N.Y. WARN Act requires 90 days' notice. *Id.* Within the WARN Class, Plaintiffs Porcino, Argulo, Powell and Shusterman bring federal and N.Y. WARN claims against Optum and the Staffing Agencies arising from the terminations between March 1 and April 29, 2022 (the "Staffing Agency

Subclass"). Plaintiffs Coleman and Holmes bring federal and N.Y. WARN claims only against Optum on behalf of those terminated on or about April 29, 2022 (the "HHC Subclass"). Plaintiffs Coleman and Holmes also bring suit against New York City Health & Hospitals Corp. ("H+H") under the New York Wage Theft Protection Act, NYLL § 195(3) ("WTPA"), alleging it failed to furnish their final pay statements.

Pending before the Court are Defendants' motions to dismiss and motions to compel arbitration. ECF Nos. 50, 53, 56, 58, 61, 66.

After reviewing the parties' submissions and all other relevant materials, the Court **GRANTS** Defendants' motions to compel arbitration of Plaintiffs Angulo, Porcino, Powell, and Shusterman's claims against Defendants Adecco, Apex, ESG, and Insight, ECF Nos. 53, 58, 61, 66. As to the remaining claims, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs Coleman and Holmes' federal and N.Y. WARN Act claims against Optum, ECF No. 56. The Court **DENIES** Defendant H+H's motion to dismiss Plaintiffs Coleman and Holmes' WTPA claims against H+H, ECF No. 50.

## BACKGROUND

### I.    Statement of Facts

The Court assumes the parties' familiarity with the facts and procedural background of this case. Defendant H+H[1] coordinated New York City's efforts to combat COVID-19 through federally-funded testing and contact tracing, called NYC Test and Trace Corps ("T2"). Compl. at ¶¶ 26-28. H+H outsourced contract tracing to Defendant Optum, who operated a virtual call center. *Id.* at ¶¶ 29-31. Optum sub-contracted the staffing of the call center to the Staffing

---

[1] H+H is a New York corporation. *Id.* at ¶ 21.

Agencies.[2] All Plaintiffs were employed as case investigators and monitors for the Optum call center.[3]

Plaintiffs performed their work remotely. *Id.* at ¶ 42. Plaintiffs allege to "bring this action on behalf of themselves and more than 1,500 employees who worked to contain the outbreak of COVID-19 for almost two years in New York City[.]" *Id.* at ¶¶ 1, 22. Plaintiffs have not alleged their states of residence, nor where they were located at the time they carried out contact tracing work.

At hiring, Plaintiffs were not given a fixed duration of their employment. *Id.* at ¶¶ 72, 138. But Plaintiffs were aware that their employment was "temporary/provisional" or under a "contract" that "might expire in the spring of 2021 … [or] the end of June 2022." *Id.* at ¶¶ 73-74, 93. H+H twice extended its contract with Optum. *Id.* at ¶ 114. Plaintiffs allege that Optum maintained complete control over the hiring and firing of Plaintiffs, although Plaintiffs were on the payroll of the Staffing Agencies or H+H. *Id.* at ¶¶ 36-39, 55, 130. All reported to Optum managers. *Id.* at ¶ 39. Optum made decisions on job descriptions, pay levels, and hiring criteria, and set personnel policies. *Id.* at ¶¶ 117-120, 125. Defendants terminated Plaintiffs' employment between March 1 and April 29, 2022. *Id.* at ¶¶ 139-143. Defendants stated the layoffs were due to a declining need in the number of contract tracers during the Omicron surge, and increased vaccinations and medications. *Id.* at ¶ 104; ECF No. 51 at 15.

Plaintiffs filed their Complaint on July 1, 2022. ECF No. 1, Compl. Plaintiffs argue they were entitled to 90 or 60 days' notice of their termination pursuant to the N.Y. and federal

---

[2] *Id.* at ¶ 36. Optum is a Delaware corporation headquartered in Minnesota. *Id.* at ¶¶ 12-14. Adecco is a Delaware corporation headquartered in Florida. *Id.* at ¶ 20. Apex is based in Virginia. *Id.* at ¶ 18. ESG is a Delaware corporation headquartered in Colorado. *Id.* at ¶ 19. Insight is a Delaware LLC headquartered in Georgia. *Id.* at ¶ 17.
[3] Plaintiffs Coleman and Holmes were employed by H+H, Plaintiff Porcino was employed by Insight, Plaintiff Angulo was employed by Apex, Plaintiff Powell was employed by ESG, and Plaintiff Shusterman was employed by Adecco. Compl. at ¶¶ 6-11.

WARN Acts. They also allege H+H failed to furnish the final pay statements of Plaintiffs Coleman and Holmes.

All Defendants moved to dismiss, and Defendants Adecco, Apex, ESG, and Insight also moved to compel arbitration. ECF Nos. 50, 53, 56, 58, 61, 66. Plaintiffs filed a joint opposition to the motions of Defendants Optum, Insight, Apex, ESG, and Adecco, ECF No. 75, and a separate opposition to the motion of H+H, ECF No. 77. Defendants filed their replies. ECF No. 80, 84-85, 87-89. Plaintiffs filed a surreply to H+H's reply. ECF No. 83.

The Court finds that Plaintiffs Angulo, Porcino, Powell, and Shusterman agreed to arbitrate. The Court dismisses Plaintiffs Coleman and Holmes' N.Y. WARN Act claims for failure to show that they performed their remote work in New York, and their federal WARN Act claim for failure to show that Optum should be held liable under the single employer doctrine.

For the reasons stated herein, Defendants' motions to compel arbitration are hereby **GRANTED** in regard to Plaintiffs Angulo, Porcino, Powell, and Shusterman, ECF Nos. 50, 53, 56, 58, 61, 66. Defendant Optum's motion to dismiss the federal and N.Y. WARN Act claims of Plaintiffs Coleman and Holmes against Optum is hereby **GRANTED,** ECF No. 56. The Court **DENIES** Defendant H+H's motion to dismiss Plaintiffs Coleman and Holmes' WTPA claims against H+H, ECF No. 50.

## LEGAL STANDARD

### I.    Federal Rules of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to

relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

Deciding whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

### I.      Arbitration

Under the Federal Arbitration Act ("FAA"), which governs arbitration agreements, an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has held that the FAA established "a liberal federal policy favoring arbitration agreements" and that courts must "rigorously . . . enforce arbitration agreements." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted). Parties may agree to have an arbitrator decide both

"'gateway' questions of 'arbitrability'" and the merits of their contractual disputes. *Rent-A-Ctr. West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010). *See also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). Questions of arbitrability include: "(1) 'whether the parties are bound by a given arbitration clause' and (2) 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" *Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 45 (E.D.N.Y. 2017) (quoting *VRG Linhas S.A. v. MatlinPatterson Glob. Opportunities Partners II L.P.*, 717 F.3d 322, 325 n.2 (2d Cir. 2013)).

In deciding whether claims are subject to arbitration, the Court must determine (1) whether the parties entered into a valid agreement to arbitrate at all and (2) whether the claim falls within the scope of the agreement. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011) (citing *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002)). "Before addressing the second inquiry, we must also determine who—the court or the arbitrator—properly decides the issue." *In re Am. Exp.*, 672 F.3d at 128 (citing *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 393 (2d Cir. 2011). The Supreme Court has "distinguished between 'questions of arbitrability,' which are to be resolved by the courts unless the parties have clearly agreed otherwise, and other 'gateway matters,' which are presumptively reserved for the arbitrator's resolution." *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n, Local 38*, 351 F.3d 43, 45 (2d Cir. 2003), quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002).

"Questions of arbitrability" regard "dispute[s] about whether the parties are bound by a given arbitration clause" and "disagreement[s] about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Howsam*, 537 U.S. at 84. Questions of arbitrability are subject to judicial resolution *unless* "there is clear and

unmistakable evidence from the arbitration agreement . . . that the parties intended that [they] be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotation marks omitted). But "where parties would likely expect that an arbitrator would decide the gateway matter", there is a presumption that "procedural questions which grow out of the dispute and bear on its final disposition" are for the arbitrator to decide. *Howsam*, 537 U.S. at 84 (internal quotation marks omitted).

Waiver and estoppel are presumptively decided by the arbitrator. *Republic of Ecuador*, 638 F.3d at 394. "[W]here the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the Court] may rule on the basis of that legal issue and 'avoid the need for further court proceedings.'" *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund*, 661 F.3d 164, 172 (2d Cir. 2011).

When determining whether the parties have entered a valid agreement to arbitrate, "courts should apply ordinary state-law principles that govern the formation of contracts," and evaluate the allegations "to determine whether they raise a genuine issue of material fact." *Sacchi v. Verizon Online LLC*, No. 14-CV-00423, 2015 WL 765940, at *4 (S.D.N.Y. Feb. 23, 2015) (internal citations and quotation marks omitted).

In deciding a motion compel arbitration, courts must first determine "whether the parties agreed to arbitrate." *Id.* Next, courts must decide "whether the issue of arbitrability is for the court or for the arbitrator." *Gringas v. Think Fin., Inc.*, 922 F.3d 112, 125 (2d Cir. 2019) (quoting *Bell*, 293 F.3d at 565). Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Schein*, 139 S.Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

In general, courts have found "clear and unmistakable evidence" of parties' intention to arbitrate arbitrability when there is "[b]road language expressing an intention to arbitrate all aspects of all disputes[.]" *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019). *See also Bolden v. DG TRC Mgmt. Co., LLC*, No. 19-CV-003425 (KMW), 2019 WL 2119622, at *4-7 (S.D.N.Y. May 15, 2019). Similarly, courts have concluded if "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). *See also Southside Hosp. v. New York State Nurses Ass'n*, 732 F. App'x 53, 55 (2d Cir. 2018) (same); *Offshore Expl. & Prod., LLC v. Morgan Stanley Private Bank, N.A.*, 626 F. App'x 303, 305-06 (2d Cir. 2015) (same).

## II.     Plaintiffs Agreed to Arbitrate with Defendants Adecco, Apex, ESG, and Insight and Their Claims Against Those Defendants Must Be Stayed Pending Arbitration.

Defendants Adecco, Apex, ESG, and Insight have moved to compel arbitration. ECF Nos. 53, 58, 61, 66. Plaintiffs Angulo, Powell, Porcino, and Shusterman signed employment and arbitration agreements with their respective employers.[4] In doing so, Defendants contend employees assented to 1) arbitrate any disputes related to their employment, and 2) waived the right to bring class actions against Adecco, Apex, and Insight, which bar their representative claims. Insight's arbitration agreement does not contain a class action waiver. If enforceable, the agreements clearly encompass Plaintiffs' federal and N.Y. WARN claims. In the alternative, Defendants move to dismiss these claims. Plaintiffs do not challenge the existence of the

---

[4] Plaintiff Angulo signed an arbitration agreement with Apex. See ECF No. 54, Exhibit 1, Colleen Harper Decl.; ECF No. 54-1, Exhibit A, Contract Employment Agreement; and ECF No. 54-2, Exhibit B, Arbitration Agreement. Plaintiff Powell signed an arbitration agreement with ESG. See ECF No. 59, Exhibit 1, Anastasia Moore Decl.; and ECF No. 59-1, Exhibit A, Consultant Employment Agreement. Plaintiff Porcino signed an arbitration agreement with Insight. See ECF No. 64, Sylvia Peat Decl.; and ECF No. 64-1, Exhibit A, Employment Agreement. Plaintiff Shusterman signed a Dispute Resolution Agreement with Adecco. See ECF No. 68, Rachel Prentiss Decl.; and ECF No. 68-2, Exhibit B, Dispute Resolution Agreement.

arbitration agreements. Rather, Plaintiffs take the position that WARN Act claims are not subject to arbitration.

The Court will apply New York's choice-of-law rules "to determine whether and to what extent the parties' contractual choice should be honored." *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987). "Courts 'generally enforce choice-of-law clauses,' in accordance with the well-settled principle that 'contracts should be interpreted so as to effectuate the parties' intent.'" *DarkPulse, Inc. v. FirstFire Glob. Opportunities Fund, LLC*, No. 21 CIV. 11222 (ER), 2023 WL 199196, at *12 (S.D.N.Y. Jan. 17, 2023) (quoting *Ministers & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 470 (2015)). A choice-of-law provision must bear "a reasonable relationship to the parties or the transaction." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 95 (S.D.N.Y. 2021) (quoting *Welsbach Elec. Corp. v. MasTec N. Am., Inc.*, 7 N.Y.3d 624, 629, 825 N.Y.S.2d 692, 859 N.E.2d 498 (2006)) (internal quotation marks omitted)). "[C]ourts in this Circuit have deemed one party's incorporation in the state of the parties' chosen law sufficient for purposes of the 'reasonable relationship' test." *EMA Fin., LLC v. NFusz, Inc.*, 444 F. Supp. 3d 530, 541 (S.D.N.Y. 2020) (collecting cases). "New York courts may refuse to enforce a choice-of-law clause only where (1) the parties' choice has no reasonable basis or (2) application of the chosen law would violate a fundamental public policy of another jurisdiction with materially greater interests in the dispute." *Id.* at 540 (quoting *Beatie & Osborn LLP v. Patriot Sci. Corp.*, 431 F. Supp. 2d 367, 378 (S.D.N.Y. 2006)) (internal quotation marks omitted).

Plaintiff Angulo executed an employment and arbitration agreement with Apex. The arbitration agreement does not contain a choice of law provision,[5] but it is attached to the Contract Employee Agreement which applies Virginia law: "if for whatever reason the

---

[5] ECF No. 54-2, Exhibit B, Dispute Resolution Agreement.

[Arbitration] Agreement is inapplicable, all actions under this Agreement shall be brought exclusively and only in Virginia[.]"[6] Because Defendant Apex is based in Virginia, and the employment agreement applies Virginia law,[7] the Court construes the arbitration agreement to be governed by Virginia law. *See EMA Fin.*, 444 F. Supp. 3d at 541 (a party's incorporation in state satisfies reasonable relationship test); *Power Up Lending Grp., Ltd v. Danco Painting, LLC*, No. 15-CV-4537(JS)(SIL), 2016 WL 5362558, at *4 (E.D.N.Y. Aug. 10, 2016), *report & recommendation adopted*, No. 15-CV-4537(JS)(SIL), 2016 WL 5349784 (E.D.N.Y. Sept. 23, 2016) ("As Plaintiff is a Virginia corporation and the parties agreed to apply the state's laws, the Court finds sufficient contacts with the state of Virginia."); *Comprehensive Habilitation Servs., Inc. v. Com. Funding Corp.*, No. 05 CIV. 9640 (PKL), 2009 WL 935665, at *10 (S.D.N.Y. Apr. 7, 2009) (same).

The Apex arbitration agreement reads as follows:

> Employee and Company agree to arbitrate any dispute arising out of or related to Employee's employment with, or termination of employment from, Company. . . . This includes disputes arising out of or relating to interpreting this Agreement, but does not include disputes relating to the validity of this Agreement or enforcing this Agreement or any portion of this Agreement. This Agreement also applies, without limitation, to disputes regarding the employment relationship[.][8]

Additionally, Plaintiff Angulo's agreement with Apex contains a class action waiver: "[t]here will be no right or authority for any dispute to brought, heard, or arbitrated as a class action."[9] Courts have generally held "[c]lass action waivers…are valid and enforceable." *Vitrano v. N.A.R., Inc.*, No. 18-CV-06754-KAM-RLM, 2020 WL 1493620, at *9 (E.D.N.Y. Mar. 27,

---

[6] ECF No. 54-1, Exhibit A, ¶ 19.
[7] *Id.*
[8] ECF No. 54-2, Exhibit B, ¶ 1.
[9] ECF No. 54-2, Exhibit B, ¶ 4.a.5.

2020). Under Virginia contract law, "[i]t is elementary that mutuality of assent—the meeting of the minds of the parties—is an essential element of all contracts." *Phillips v. Mazyck*, 273 Va. 630, 636, 643 S.E.2d 172, 175 (2007) (citation omitted). "A contract cannot exist if the parties never mutually assented to terms proposed by either as essential to an accord." *Valjar, Inc. v. Mar. Terminals, Inc.*, 220 Va. 1015, 1018, 265 S.E.2d 734, 737 (1980) (citation omitted). Signing an employment agreement containing an arbitration provision constitutes assent. *Soucie v. Virginia Util. Prot. Serv., Inc.*, No. 7:22-CV-00552, 2023 WL 2991487, at *4-5 (W.D. Va. Apr. 18, 2023) (collecting cases). Public policy in Virginia favors arbitration. *Mission Residential, LLC v. Triple Net Props.*, LLC, 275 Va. 157, 160-1, 654 S.E.2d 888, 890-1 (2008) ("A presumption in favor of arbitrability arises only after the existence of such an agreement has been proved[.]") (citation omitted). In this case, Plaintiff Angulo assented to the employment agreement by signing, and therefore, assented to the arbitration provision and the class action waiver.

Similarly, Plaintiff Powell's arbitration agreement with Defendant ESG encompasses any dispute arising under the ESG employment agreement: "Any dispute arising under this Agreement will be subject to binding arbitration . . . . The parties agree that this Agreement will be governed by and construed and interpreted in accordance with the laws of the State of Colorado. The arbitration will be held in Colorado."[10] ESG is headquartered in Colorado, and the arbitration agreement is governed by Colorado law.[11] In Colorado, "signatures on written agreements—including digital signatures—are widely accepted as evidence of mutual assent." *Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2021 WL 4439800, at *6 (D. Colo. Sept. 27, 2021) (enforcing arbitration agreements against plaintiff-employees).

---

[10] ECF No. 59-1, Exhibit A, Consultant Employment Agreement.
[11] *Id.* at § 12.

Plaintiff Powell agreed to the arbitration provision by signing ESG's arbitration agreement. It is clear the parties here intended to arbitrate disputes arising from the employment agreement because ESG's consulting employment agreement encompasses Plaintiff's employment and termination at ESG: "This Agreement will extend to . . . Consultant's Work[.]"[12] Plaintiff Powell brings federal and state WARN Act claims against ESG, which arise out of his employment and termination at ESG. Therefore, Plaintiff Powell assented to ESG's arbitration provision.

Plaintiff Porcino executed an Employment Agreement with Insight.[13] The Employment Agreement does not specify which state's law governs the agreement. Insight is a Delaware LLC headquartered in Georgia. Compl. at ¶ 17. Neither Plaintiff Porcino nor Defendant Insight provide clarity as to which state's law to apply. Where a contract lacks a choice of law provision, "the controlling law would be the contract's 'center of gravity,' which typically is the place of contracting or performance." *TCA Television Corp. v. McCollum*, 839 F.3d 168, 188 (2d Cir. 2016) (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)). Plaintiffs have not alleged that they worked in New York. However, they allege they were employed to contact trace COVID-19 infections in New York City. The Court will therefore examine the Agreement under New York state law.

Insight's Agreement likewise contained an arbitration clause to arbitrate any claims or disputes arising out of Plaintiff's employment or termination from Insight.[14] The Employment Agreement contained a disclaimer on its first page highlighting the arbitration provision: "By signing this Agreement, you consent that any covered future dispute relating to your employment

---

[12] *Id.* at p. 1.
[13] ECF No. 64-1, Exhibit A, Employment Agreement.
[14] *Id.* at § 21.

with Insight Global will be submitted to binding arbitration, as explained more fully in Section

21 below." [15] In relevant part, Section 21 reads:

> [I]n the event of any dispute or claim arising out of or relating to
> Contract Employee's . . . employment with Insight Global, the
> termination of Contract Employee's employment, or otherwise
> relating to this Agreement (collectively, "Disputes"), Contract
> Employee and Insight Global agree that all such Disputes shall be
> fully, finally and exclusively resolved by confidential, binding,
> individual arbitration before the [AAA]. Contract Employee and
> Insight Global agree that a confidential arbitration . . . is the sole
> and exclusive forum for resolution of any and all Disputes. [16]

Insight's Employment Agreement also contains a class action waiver: "Contract

Employee and Insight Global hereby agree that neither Insight Global nor Contract Employee

may submit a class, collective, or representative action for arbitration under this Arbitration

Provision." [17]

In New York, "a person who signs a contract is presumed to know its contents and to

assent to them." *Berger v. Cantor Fitzgerald Securities*, 967 F. Supp. 91, 93 (S.D.N.Y.1997)

(citations omitted); *see also Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 48 (E.D.N.Y.

2017) (assent through digital signatures or checking relevant boxes). Here, Plaintiff Porcino does

not dispute that she digitally signed the employment agreement. Plaintiff brings federal and N.Y.

WARN claims against Insight, which concern her termination and employment at Insight. Her

claims clearly fall within the scope of the arbitration agreement. Courts in New York generally

hold class action waivers to be valid and enforceable." *Vitrano*, 2020 WL 1493620, at *9.

Therefore, Plaintiff Porcino agreed to be bound by the agreement.

---

[15] *Id.* at § 21.
[16] *Id.* at § 21.
[17] *Id.* at § 21.

Finally, Plaintiff Shusterman signed a Dispute Resolution Agreement with Adecco that governs all disputes arising out of her employment with Adecco: "the Company and Employee agree that any and all disputes, claims or controversies arising out of or relating to this Agreement, the employment relationship between the Parties, or the termination of the employment relationship (collectively, "Claims" or individually, "Claim"), shall be resolved by binding arbitration[.]"[18]

Adecco's Dispute Resolution Agreement also contains a class action waiver: "By signing this agreement, the parties agree that each may bring claims against the other only in their individual capacities and not as a plaintiff, class, or collective action member in any purported class and/or Collective action proceeding."[19]

The Agreement does not contain a choice of law provision. The Court must then apply New York state law, outlined above. *See Berger*, 967 F. Supp. at 93. Because Plaintiff Shusterman was made aware of the arbitration provision and signed the Agreement, she assented to arbitration.

Plaintiffs allege WARN Acts are not subject to arbitration. However, "federal statutory claims are subject to the FAA, which requires enforcement of arbitration agreements . . . unless the FAA's mandate has been overridden by a contrary congressional command. There is no such contrary congressional command here." *Romero v. Ctr, for Excellence in Higher Education, Inc.*, No. 21 Civ. 1124, 2023 WL 172229, at *5 (D. Del. Jan. 12, 2023), *report & recommendation adopted*, No. CV 21-1124-RGA, 2023 WL 2662330 (D. Del. Mar. 28, 2023). This Court has repeatedly upheld arbitration provisions in WARN Act cases. *N.Y. Hotel & Motel Trades Council v. CF 43 Hotel, LLC*, 2017 WL 2984168, at *5 (S.D.N.Y. June 14, 2017) (N.Y. WARN

---

[18] ECF No. 68-2, Exhibit B, Dispute Resolution Agreement.
[19] ECF No. 68-2, Exhibit B, Dispute Resolution Agreement.

Act); *Forbes v. CS First Bos. Corp.*, 1995 WL 746566, at *1 (S.D.N.Y. Dec. 14, 1995) (federal

WARN Act). The Supreme Court has also enforced arbitration agreements against Federal Labor

Standards Act claims. *Epic Sys.*, 138 S. Ct. at 1626-28, 1632 ("[E]very circuit to consider the

question" has "held that the FLSA allows agreements for individualized arbitration."). Plaintiffs

do not cite to case law supporting their contention that individual WARN Act claims may not be

subject to arbitration.

 For the reasons set forth above, Defendants have presented evidence sufficient to

establish the existence of enforceable arbitration agreements. It being established that Plaintiffs

Angulo, Porcino, Powell, and Shusterman entered into arbitration agreements with Defendants

Adecco, Apex, ESG, and Insight, their individual claims under the WARN Acts must be subject

to arbitration. Plaintiffs do not dispute that the Court may resolve questions of arbitrability.

*Mulvaney*, 351 F.3d at 45.

 The Court now turns to the applicability of class action waivers to federal and state

WARN Act claims.

### a.  The Right to Waive a Representative Action Under the WARN Acts.

 Plaintiffs challenge whether the waiver of a right to bring a representative action under

the WARN Acts is enforceable. Plaintiff Angulo's agreement with Apex, Plaintiff Porcino's

agreement with Insight, and Plaintiff Shusterman's agreement with Adecco contains a class

action waiver.[20] The others do not.

 Plaintiffs contend that Section 2104(a)(5)[21] of the WARN Act itself grants a substantive

right to bring representative actions to enforce the Act as a person may sue for themselves or for

---

[20] ECF No. 54-2, Exhibit B, ¶ 4.a.5.; ECF No. 64-1, § 21; ECF No. 68-2.
[21] Section 2104(a)(5) provides:
   A person seeking to enforce such liability, including a representative of
   employees or a unit of local government aggrieved under paragraph (1) or (3),

other persons similarly situated. *May v. Blackhawk Mining*, 319 F.R.D. 233, 236 (E.D. Ky. 2017); *see also Young v. Fortis Plastics, LLC*, 294 F.R.D. 128, 134 (N.D. Ind. 2013) ("The WARN Act indicates that class treatment may be appropriate in this type of litigation, providing that a person may sue 'for other persons similarly situated.'"). As such, Plaintiffs argue that under the FAA, the Court may decline to enforce an arbitration agreement because this substantive statutory right may not be waived by arbitration, pursuant to the recent Supreme Court decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1922 (2022). In *Viking*, the Supreme Court determined the FAA "do[es] not mandate the enforcement of waivers of representative capacity" and the right to bring a PAGA representative claim "is not preempted by the FAA[.]" *Id.* at 1922, 1925.

Plaintiffs' argument is unavailing and not rooted in case law. For one, *Viking* itself recognizes that the California Private Attorneys General Act claims in that matter "exhibit virtually none of the procedural characteristics of class actions." *Id*. at 1914, 1920. PAGA claims are not certified as class actions. *Id*. at 1912. Plaintiffs have not cited to a single case in which a court agreed with their conclusion. In fact, a recent decision in Delaware reached the opposite conclusion. In *Romero*, a plaintiff likewise argued the WARN Act provided a non-waivable substantive right to bring a representative action. The court rejected that contention and compelled arbitration of the plaintiff's representative WARN Act claims, explaining that "federal statutory claims are subject to the FAA, which requires enforcement of arbitration agreements, including class action waivers, unless the FAA's mandate has been overridden by a contrary congressional command. There is no such contrary congressional command here." 2023 WL

---

may sue either for such person or for other persons similarly situated, or both, in any district court of the United States for any district in which the violation is alleged to have occurred, or in which the employer transacts business.

17222, at *5. The court in *Romero* compared the similar language in § 2104(a)(5) to the language of the Age Discrimination and Employment Act ("ADEA"), which expressly permits collective actions. The Supreme Court has upheld ADEA class waivers in arbitration agreements. *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 237 (2013), citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31–32 (1991). The Supreme Court has also enforced arbitration agreements against Federal Labor Standards Act claims. *Epic Sys.*, 138 S. Ct. at 1626-28, 1632. The same must be true of WARN Act claims.

As in *Romero*, Plaintiffs have not established that the WARN Act's "reference to some type of representative action creates a substantive right as opposed to a procedural right, nor ha[ve] [they] provided any authority suggesting that it is substantive." 2023 WL 17222, at *4. Fed. R. Civ. Pro. 23 confers a procedural right that may be waived. *Id.* This Court has repeatedly upheld arbitration provisions in WARN Act cases. *N.Y. Hotel & Motel Trades Council v. CF 43 Hotel, LLC*, 2017 WL 2984168, at *5 (S.D.N.Y. June 14, 2017) (N.Y. WARN Act); *Forbes v. CS First Bos. Corp.*, 1995 WL 746566, at *1 (S.D.N.Y. Dec. 14, 1995) (federal WARN Act).

Plaintiffs have not convinced the Court that a congressional command in the WARN Act overrides the FAA. The claims of Plaintiffs Angulo, Porcino, Powell, and Shusterman against Defendants Adecco, Apex, ESG, and Insight are therefore subject to an enforceable arbitration agreement. In the case of Adecco, Apex, and Insight case, the class action waiver bars Plaintiffs' representative claims. Because the employment agreement of ESG does not contain a class action waiver, Powell is not barred from pursuing a representative claim in arbitration.

### III.     Motions to Dismiss.

The Court now turns to the remaining claims: Plaintiffs Coleman and Holmes' federal and N.Y. WARN Act claims against Optum, and WTPA claims against H+H. Plaintiffs Coleman and Holmes' employment agreements with H+H did not contain an arbitration provision.

Plaintiffs allege that although employed by H+H, Optum controlled the work of each Call Center employee. Plaintiffs do not seek liability against H+H because governmental entities are not covered by the WARN Acts. As such, Plaintiffs Coleman and Holmes seek violations of the WARN Acts by Optum.

### a. WARN Act Claims.

A plaintiff bringing federal or N.Y. WARN Act claims must properly plead: (1) whether a plaintiff qualifies as an "affected employee"; (2) whether the "affected employee" meets the WARN threshold; and (3) whether the defendant employer is a "covered employer" under the WARN Acts. *Shaw v. Hornblower Cruises & Events LCC*, Case No. 21-CV-10408, 2022 WL 16748584 (S.D.N.Y. Nov. 7, 2022). Complaints lacking adequate factual bases for WARN Act claims must be dismissed. *Id.* at *6-7 ("Plaintiffs have not provided any guiding facts . . . to aid this Court in making a reasonable inference that the WARN Act was violated.").

### b. N.Y. WARN Act Claims.

The N.Y. WARN Act cannot be applied exterritorialy – that is, it only covers work performed in the state. *Magnuson v. Newman*, No. 10-cv-6211, 2013 WL 5380387, at *5 (S.D.N.Y. Sept. 25, 2013) ("[T]he statute does not apply to people who work outside of the State of New York."). In this case, Plaintiffs have not specified where they performed their remote work. They allege to "bring this action on behalf of themselves and more than 1,500 employees who worked to contain the outbreak of COVID-19 for almost two years in New York City[.]" Compl. at ¶¶ 1, 22. "All the Case Investigators and Monitors worked remotely." *Id.* at ¶ 42. Plaintiffs have not alleged their states of residence, nor where they were located at the time they carried out contact tracing work.

No court since the onset of the COVID-19 pandemic has explicitly addressed whether telework performed for New York is sufficient to state a claim under the N.Y. WARN Act. The

N.Y. WARN Act does not appear to contemplate remote works as being covered by the statute.

Under 12 NYCRR § 921-1.1(a), an "affected employee" under the statute must "experience an

employment loss as the result of a proposed plant closing [or] mass layoff[.]" *Id.* The statute

defines a "plant closing" as the termination of workers at a single site of employment. N.Y. Lab.

Law § 860-a. A "single site of employment" may include working within a single building,

working in locations in proximity to each other (such as an industrial park), or employees whose

primary duties require travel. 12 NYCRR § 921-1.1(p). Plaintiffs worked remotely and do not

meet any of the "single site of employment" definitions outlined in the statute. *Id.* In the absence

of on-point case law, the fact that the N.Y. WARN Act requires a single site of employment

weighs against finding that remote Plaintiffs have established a claim under the N.Y. WARN

Act.As such, Plaintiffs cannot clearly establish a basis for bringing a N.Y. WARN Act claim.

Their New York claims must be dismissed for this reason. The Court next analyzes whether

Plaintiffs have sufficiently alleged a federal WARN Act claim.

### c. Plaintiffs Have Failed to Establish Optum Is Liable for Federal WARN Act Violations Under the Single Employer Doctrine.

Plaintiffs attempt to plead liability for violations of the WARN Acts by grouping Optum

with H+H under the single employer doctrine, which permits two distinct entities to be a single

employer. *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005). Liability

may be extended to an affiliated entity. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 478

(3d Cir. 2001). In the Second Circuit, an employee alleging a single employer relationship is

required to show the following five factors: (i) common ownership; (ii) common

directors/officers; (iii) de facto exercise of control; (iv) unity of personnel policies emanating

from a common source; and (v) dependency of operations. *Guippone v. BH S & B Holdings LLC*,

737 F.3d 221, 226 (2d Cir. 2013); 20 C.F.R. § 639.3(a)(2). It is a balancing test. *Pearson*, 247 F.3d at 490. "[A]ll factors need not be present for liability to attach." *Guippone*, 737 F.3d at 226.

The determinative factor is the existence of control of labor relations. *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995). "[I]f the de facto exercise of control was particularly striking—for instance, were it effectuated by 'disregard[ing] the separate legal personality of its subsidiary' then liability might be warranted even in the absence of the other factors." *Guippone*, 737 F.3d at 226 (quoting *Pearson,* 247 F.3d at 504) (internal citation omitted). This Circuit has declined to extend the single employer doctrine beyond the corporate subsidiary and the subcontracting of the plaintiff's employment to another distinct employer. *See Gulino v. New York State Educ. Dep't*, 460 F.3d 361 (2d Cir. 2006).

Here, Plaintiffs may only hold Optum liable for WARN Act violations if they successfully plead liability under the single employer doctrine, particularly because as a governmental agency, H+H cannot be held liable. On its face, the Complaint does not plead that Optum and H+H share a common ownership, or common directors or officers. Plaintiffs allege a dependency of operations because Optum provided Plaintiffs the electronic equipment necessary to carry out their duties. *Pearson*, 247 F.3d at 500. However, this alone is insufficient to establish a dependency of operations.

Plaintiffs have not shown one employer, in this case Optum, exercised *de facto* control by solely making employment practice decisions that gave rise to the litigation. *Guippone*, 737 F.3d 221, at 227. *AFA Inv., Inc v. AFA Foods, Inc.*, No. 12-11127, 2012 WL 6544945, at *6 (Bankr. D. Del. Dec. 14, 2012) (granting motion to dismiss for failure to properly plead single employer liability with respect to WARN claims). Plaintiffs contend "the employees were treated like Optum employees as it pertained to their work" and "Optum exclusively controlled the day-to-

day work." ECF No. 75 at 43. Plaintiffs argue Optum made the ultimate hiring and firing

decisions. Yet employees were on the Staffing Agencies' payroll. Compl. at ¶ 120. But Plaintiffs

signed employment agreements with H+H, not Optum. And, in *Pearson*, the Third Circuit found

one company's control of hiring and firing of another's employees was insufficient to establish

control or unity of personnel policies. 247 F.3d at 505.

Plaintiffs contend discovery is warranted on Optum's "de facto control" as a

"decisionmaker" responsible for the layoffs. *Pearson*, 247 F.3d at 490. To be liable under the

WARN Act, a defendant must be an "employer who orders a plant closing or mass layoff." 29

U.S.C. § 2104(a)(1). The same is true under the N.Y. statute. NYLL § 860-b. But Plaintiffs have

not established Optum as a single employer decided to terminate Plaintiffs' employment, and

thus they have not pleaded *de facto* control.

Neither do Plaintiffs meet their burden to establish unity of personnel policies emanating

from a common source. This includes benefits, payroll policies, and hiring and firing. *Vogt v.

Greenmarine Holding*, 318 F. Supp. 2d 136, 143 (S.D.N.Y. 2004). Yet Plaintiffs themselves

admit personnel policies came from a variety of sources, including H+H. While Optum did

provide job descriptions and some personnel policies, H+H sourced employees for Optum, hired

employees, and had employees on their payroll. Compl. ¶¶ 117-120, 125. The facts do not

support that H+H and Optum were highly integrated to constitute a single enterprise. As such,

Plaintiffs have not met their burden to establish liability under the single employer doctrine.

Because Plaintiffs Coleman and Holmes have failed to establish federal WARN Act liability

under the single employer doctrine, the Court need not reach the remaining prongs of the WARN

Act test.

### IV.    Plaintiffs Properly Allege a WTPA Claim.

Plaintiffs Coleman and Holmes allege H+H did not provide their final paystub in violation of the WTPA. Under Section 3 of the statute, employers must provide "a statement with every payment of wages" containing the rate of pay, whether payment is by the hour, shift, day, week, salary, or some other method, and the employer's contact information. NYLL § 195(3). Employees shall recover statutory damages for violations of Subdivision 3. NYLL § 198(1-d). H+H does not deny that Plaintiffs were not furnished with their final paystub. Therefore, Plaintiffs have properly alleged a WTPA claim, and Defendant H+H's motion to dismiss this claim is **DENIED**.

## V. Leave to Amend Complaint

Finally, Plaintiffs seek leave to amend their Complaint. Rule 15(a)(2) states "the court should freely give leave when justice so requires." *Id*. The Supreme Court has instructed that "this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, it is ultimately "within the sound discretion of the court whether to grant leave to amend." *John Hancock Mut. Fife Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994) (citing *Foman*, 371 U.S. at 178). "[L]eave to amend is not necessary when it would be futile." *Ashmore v. Prus*, 510 F. App'x 47, 49 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

There is no indication that granting Plaintiffs leave would be anything but futile. There are numerous flaws in their Complaint fatal to their claims. Because Plaintiffs fail to plead adequate facts to support their WARN Act claims, the Court **DECLINES** to grant leave to amend.

## CONCLUSION

For the reasons set forth by the Court, Defendants' motions to compel arbitration of Plaintiffs Angulo, Porcino, Powell, and Shusterman's claims against Defendants Adecco, Apex, ESG, and Insight, ECF Nos. 53, 58, 61, 66, are hereby **GRANTED**. In the case of Adecco, Apex, and Insight case, the class action waiver bars Plaintiffs' representative claims. Because the employment agreement of ESG does not contain a class action waiver, Powell is not barred from pursuing a representative claim in arbitration. As to the remaining claims, Defendant's motion to dismiss Plaintiffs Coleman and Holmes' federal and N.Y. WARN Act claims against Optum, ECF No. 56, is **GRANTED** for failure to state liability under the single employer doctrine. Defendant H+H's motion to dismiss Plaintiffs Coleman and Holmes' WTPA claims against H+H, ECF No. 50, is **DENIED**. Plaintiffs are **DENIED** leave to amend their Complaint.

Regarding plaintiffs Angulo, Porcino, Powell, and Shusterman, this case is stayed pending resolution of the arbitration. The parties shall provide a status report within 30 days of the completion of the arbitration or within six months of the date of this order, whichever is sooner. Regarding Coleman and Holmes' claims against H+H, the parties are encouraged to engage in settlement discussions. These parties should provide a joint status report within 45 days of the filing of this order, indicating whether they have settled or would like the assistance of a magistrate judge or court-annexed mediation to assist them.

**SO ORDERED.**

**Dated: September 29, 2023**
      **New York, New York**

                        **ANDREW L. CARTER, JR.**
                        **United States District Judge**